D. Maimon Kirschenbaum
Michael DiGiulio
JOSEPH KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Named Plaintiffs, proposed FLSA*
*Collective Plaintiffs, and proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
**LORENZO VEGA CAMILLO and LETICIA**      **CASE NO.**
**MEJIA ALEJANDRO, on behalf of**
**themselves and others similarly situated,**

             **Plaintiffs,**      **COMPLAINT**

     **v.**      **FLSA COLLECTIVE ACTION AND**
             **RULE 23 CLASS ACTION**

**KHIM'S MILLENNIUM MARKET, INC.,**      **JURY TRIAL DEMANDED**
**KHIM'S MILLENNIUM MARKET III INC.,**
**KHIM'S MILLENNIUM MARKET IV, INC.,**
**KHIM'S MILLENNIUM MARKET V, INC.,**
**KHIMS MILLENNIUM MARKET VI INC.,**
**KHIM'S ORGANIC II INC., KHIM'S**
**ORGANIC IV INC., KHIMS ORGANIC V**
**INC., KHIMS MARKET INC., SANG KYU**
**KHIM, SUNG KYU KHIM, and SONG KYU**
**KHIM,**

             **Defendants.**
---------------------------------------------------------x

     Plaintiffs allege as follows:

## INTRODUCTION

     1.      Plaintiffs Lorenzo Vega Camillo and Leticia Mejia Alejandor (collectively,

"Plaintiffs") hereby bring this complain against Defendants Khim's Millennium Market, Inc.,

Khim's Millennium Market III Inc., Khim's Millennium Market IV Inc., Khim's Millennium

Market V Inc., Khim's Millennium Market VI Inc., Khim's Organic II Inc., Khim's Organic IV

Inc., Khim's Market Inc. (collectively, "Corporate Defendants"), Sang Kyu Khim, Sung Kyu Khim, and Song Kyu Khim (collectively, "Individual Defendants", and collectively with Corporate Defendants, "Defendants").

2.      This lawsuit seeks to recover unpaid overtime compensation and statutory penalties for Plaintiffs and their similarly situated co-workers – stock persons, deli countermen, produce washers, clerks, and other manual workers (collectively, "Non-Exempt Workers") – who worked or have worked at any of Khim's Millennium markets, including but not limited to those located at 460 Driggs Avenue, Brooklyn, New York 11211, 536 Myrtle Avenue Brooklyn, New York 11205, 120 Bedford Avenue, Brooklyn, New York 11211, 265 Bedford Avenue, Brooklyn, NY 11211, 280 Bedford Avenue, Brooklyn, New York 11211, 260 Bushwick Avenue, Brooklyn NY 11206, and/or 111 Lawrence Street, Brooklyn, New York 11201 (collectively, the "Khim's Markets"), within six years of the filing of this action.

3.      Owned and operated by collectively by the Corporate Defendants, the Khim's Markets offer a wide variety of healthy and organic products through their stores in New York City.

4.      Despite operating the supermarkets under the guise of separate corporations, Defendants operate all the supermarkets as part of a single integrated business enterprise that has collectively employed Non-Exempt Workers at the Khim's Markets. This enterprise is centrally controlled by Defendants Sang Kyu Khim, Sung Kyu Khim, and Song Kyu Khim who, upon information and belief, own, manage and oversee operations at all the stores.

5.      Importantly, Non-Exempt Workers at the Khim's Markets perform the same basic job duties, are subject to the same employment policies, practices and procedures, and are directed and/or permitted by Defendants to perform work at all locations without retraining.

6.      Plaintiffs brings this action on behalf of themselves and all similarly situated current and former Non-Exempt Workers who elect to opt-in to this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, specifically the collective action provision of 29 U.S.C. § 216(b), to remedy Defendants' violations of the wage-and-hour provisions of the FLSA by that have deprived Plaintiffs and other similarly situated employees of their lawfully earned wages.

7.      Plaintiffs also brings this action on behalf of themselves, and all similarly situated current and former Non-Exempt Workers pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

## JURISDICTION AND VENUE

8.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FLSA, 29 U.S.C. § 201, *et seq*. This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

### Plaintiffs

### Plaintiff Lorenzo Vega Camillo

10.      Plaintiff Camillo worked for Defendants from 2013 to October 2022.

11.      From 2013 to 2016, Plaintiff Camillo worked as a clerk at Defendants' market located at 265 Bedford Avenue, Brooklyn, NY 11211.

12.      From 2016 to October 2022, Plaintiff Camillo worked as a clerk and manager at Defendants' market located at 460 Driggs Avenue, Brooklyn, New York 11211.

13.      Plaintiff Camillo was an employee of Defendants within the meaning of the FLSA and NYLL.

14.      Plaintiff Camillo worked as a manual worker as defined under the NYLL.

15.      A written consent to sue form for Plaintiff Camillo is attached in Exhibit A.

**Plaintiff Leticia Mejia Alejandro**

16.      Plaintiff Alejandro worked as a clerk for Defendants from February 2022 to October 2022.

17.      Plaintiff Alejandro worked at Defendants' market located at 460 Driggs Avenue, Brooklyn, New York 11211.

18.      Plaintiff Alejandro was an employee of Defendants within the meaning of the FLSA and NYLL.

19.      Plaintiff Alejandro worked as a manual worker as defined under the NYLL.

20.      A written consent to sue form for Plaintiff Alejandro is attached in Exhibit B.

**<u>Defendants</u>**

21.      Defendants have employed and/or jointly employed Plaintiffs and similarly situated employees at all relevant times.

22.     Each Defendant has had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

23.     Defendants are part of a single integrated enterprise that has jointly employed Plaintiffs and similarly situated employees at all relevant times.

24.     Defendants' operations are interrelated and unified.

25.     During all relevant times, the Khim's Markets have shared a common management, and were centrally controlled and/or owned by Defendants.

26.     The Individual Defendants were present regularly at the various Khim's Markets and asserted control over the employment conditions of the workers at the markets as well as the operations of the markets themselves.

27.     During all relevant times, Defendants centrally controlled the labor relations of the Khim's Markets.

28.     During all relevant times, Defendants have allowed or required employees to transfer or be shared by and between Khim's Markets without retraining. In fact, Plaintiff Camillo worked at more than one location, and Plaintiffs are aware of at least four other individuals who have been transferred between locations and continue to work shifts at various locations.

29.     Defendants use the same branding and advertising conventions for all "Khim's Market" locations throughout New York City.

**Khim's Millennium Market, Inc.**

30.      Together with the other Defendants, Defendant Khim's Millennium Market, Inc. ("KM") has owned and/or operated the Khim's Markets during the relevant period.

31.     KM is a domestic business corporation organized and existing under the laws of New York.

32.     According to the Entity Information provided by the New York State Department of State Division of Corporations, KM's principal executive office is located at 324 Graham Avenue, Brooklyn, New York 11211, which is or was an address of one of the Khim's Markets.

33.     At all relevant times, KM has maintained control, oversight, and direction over Plaintiffs and similarly satiated employees, including timekeeping, payroll, and other employment practices that applied to them.

34.     KM has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of overtime and spread of hours compensation, as well as the timing of payments.

35.     Upon information and belief, at all relevant times KM's annual gross volume of sales made or business done was not less than $500,000.

**Khim's Millennium Market III Inc.**

36.     Together with the other Defendants, Defendant Khim's Millennium Market III Inc. ("KM III") has owned and/or operated the Khim's Markets during the relevant period.

37.     KM III is a domestic business corporation organized and existing under the laws of New York.

38.     According to the Entity Information provided by the New York State Department of State Division of Corporations, KM III's principal executive office is located at

280 Bedford Avenue, Brooklyn, New York 11211, which is or was an address of one of the Khim's Markets.

39.     At all relevant times, KM III has maintained control, oversight, and direction over Plaintiffs and similarly satiated employees, including timekeeping, payroll, and other employment practices that applied to them.

40.     KM III has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of overtime and spread of hours compensation, as well as the timing of payments.

41.     Upon information and belief, at all relevant times KM III's annual gross volume of sales made or business done was not less than $500,000.

**Khim's Millennium Market IV, Inc.**

42.     Together with the other Defendants, Defendant Khim's Millenium Market IV, Inc. ("KM IV") has owned and/or operated the Khim's Markets during the relevant period.

43.     KM IV is a domestic business corporation organized and existing under the laws of New York.

44.     According to the Entity Information provided by the New York State Department of State Division of Corporations, KM IV's principal executive office is located at 151-25 Bayside Avenue, Flushing, New York 11354.

45.     KM IV is the "Premises Name" that appears on the active New York State Liquor License for the premises located at 260 Bushwick Ave, Brooklyn, New York 11206, which is or was an address of one of the Khim's Markets.

46.     At all relevant times, KM IV has maintained control, oversight, and direction over Plaintiffs and similarly satiated employees, including timekeeping, payroll, and other employment practices that applied to them.

47.     KM IV has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of overtime and spread of hours compensation, as well as the timing of payments.

48.     Upon information and belief, at all relevant times KM IV's annual gross volume of sales made or business done was not less than $500,000.

**Khim's Millennium Market V, Inc.**

49.     Together with the other Defendants, Defendant Khim's Millennium Market V, Inc. ("KM V") has owned and/or operated the Khim's Markets during the relevant period.

50.     KM V is a domestic business corporation organized and existing under the laws of New York.

51.     According to the Entity Information provided by the New York State Department of State Division of Corporations, KV's principal executive office is located at 265 Bedford Avenue, Brooklyn, New York 11211, which is or was an address of one of the Khim's Markets.

52.     At all relevant times, KM V has maintained control, oversight, and direction over Plaintiffs and similarly satiated employees, including timekeeping, payroll, and other employment practices that applied to them.

53.     KM V has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of overtime and spread of hours compensation, as well as the timing of payments.

54.     Upon information and belief, at all relevant times KM V's annual gross volume of sales made or business done was not less than $500,000.

**Khims Millennium Market VI Inc.**

55.     Together with the other Defendants, Defendant Khims Millennium Market VI Inc. ("KM VI") has owned and/or operated the Khim's Markets during the relevant period.

56.     KM VI is a domestic business corporation organized and existing under the laws of New York.

57.     According to the Entity Information provided by the New York State Department of State Division of Corporations, KM VI's principal executive office is located at 460 Driggs Avenue, Brooklyn, New York 11211, which is or was an address of one of the Khim's Markets.

58.     KM VI is the "Premises Name" that appears on the active New York State Liquor License for the premises located at 460 Driggs Avenue, Brooklyn, New York 11211, which is or was an address of one of the Khim's Markets.

59.     At all relevant times, KM VI has maintained control, oversight, and direction over Plaintiffs and similarly satiated employees, including timekeeping, payroll, and other employment practices that applied to them.

60.     KM VI has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of overtime and spread of hours compensation, as well as the timing of payments.

61.     Upon information and belief, at all relevant times KM VI's annual gross volume of sales made or business done was not less than $500,000.

**Khim's Organic II Inc.**

62.     Together with the other Defendants, Defendant Khim's Organic II Inc. ("KO II") has owned and/or operated the Khim's Markets during the relevant period.

63.     KO II is a domestic business corporation organized and existing under the laws of New York.

64.     According to the Entity Information provided by the New York State Department of State Division of Corporations, KO II's principal executive office is located at 536 Myrtle Avenue, Brooklyn, New York 11205, which is or was an address of one of the Khim's Markets.

65.     KO II is the "Premises Name" that appears on the active New York State Liquor License for the premises located at 536 Myrtle Avenue, Brooklyn, New York 11205, which is or was an address of one of the Khim's Markets.

66.     At all relevant times, KO II has maintained control, oversight, and direction over Plaintiffs and similarly satiated employees, including timekeeping, payroll, and other employment practices that applied to them.

67.     KO II has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of overtime and spread of hours compensation, as well as the timing of payments.

68.     Upon information and belief, at all relevant times KO II's annual gross volume of sales made or business done was not less than $500,000.

**Khim's Organic IV Inc.**

69.     Together with the other Defendants, Defendant Khim's Organic IV Inc. ("KO IV") has owned and/or operated the Khim's Markets during the relevant period.

70.     KO IV is a domestic business corporation organized and existing under the laws of New York.

71.     According to the Entity Information provided by the New York State Department of State Division of Corporations, KO IV's principal executive office is located at 111 Lawrence Street, Brooklyn, New York 11201, which is or was an address of one of the Khim's Markets.

72.     At all relevant times, KO IV has maintained control, oversight, and direction over Plaintiffs and similarly satiated employees, including timekeeping, payroll, and other employment practices that applied to them.

73.     KO IV has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of overtime and spread of hours compensation, as well as the timing of payments.

74.     Upon information and belief, at all relevant times KO IV's annual gross volume of sales made or business done was not less than $500,000.

**Khims Organic V, Inc.**

75.     Together with the other Defendants, Defendant Khims Organic V, Inc. ("KO V") has owned and/or operated the Khim's Markets during the relevant period.

76.     KO V is a domestic business corporation organized and existing under the laws of New York.

77.     According to the Entity Information provided by the New York State Department of State Division of Corporations, KO V's principal executive office is located at 120 Bedford Avenue, Brooklyn, New York 11211, which is or was an address of one of the Khim's Markets.

78.     At all relevant times, KO V has maintained control, oversight, and direction over Plaintiffs and similarly satiated employees, including timekeeping, payroll, and other employment practices that applied to them.

79.     KO V has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of overtime and spread of hours compensation, as well as the timing of payments.

80.     Upon information and belief, at all relevant times KO V's annual gross volume of sales made or business done was not less than $500,000.

**Khims Market Inc.**

81.     Together with the other Defendants, Defendant Khims Market Inc. ("Khims") has owned and/or operated the Khim's Markets during the relevant period.

82.     Khims is a domestic business corporation organized and existing under the laws of New York.

83.     According to the Entity Information provided by the New York State Department of State Division of Corporations, Khims principal executive office is located at 536 Myrtle Avenue, Brooklyn, New York 11205, which is or was an address of one of the Khim's Markets.

84.     At all relevant times, Khims has maintained control, oversight, and direction over Plaintiffs and similarly satiated employees, including timekeeping, payroll, and other employment practices that applied to them.

85.     Khims has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of overtime and spread of hours compensation, as well as the timing of payments.

86.     Upon information and belief, at all relevant times Khims' annual gross volume of sales made or business done was not less than $500,000.

**Sang Kyu Khim**

87.     Upon information and belief, Defendant Sang Kyu Khim ("Sang") is a resident of the State of New York.

88.     At all relevant times, Sang has been one of the founders, owners, and operators of the Khim's Markets.

89.     The Entity Information provided by the New York State Department of State Division of Corporations identifies Sung as the "Chief Executive Officer" of KM and Khim's.

90.     Sang is the "Principal" listed on the New York State Liquor License for the premises doing business as "Khim's Millennium Market" located at 536 Myrtle Avenue, Brooklyn, New York, 11205.

91.     At all relevant times, Sang had power over personnel decisions at the Khim's Markets, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

92.     At all relevant times, Sang had power over payroll decisions at the Khim's Markets, including the power to retain time and/or wage records.

93.     At all relevant times, Sang was actively involved in managing the day to day operations of the Khim's Markets.

94.     At all relevant times, Sang had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

95.     Sang was a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, employed and/or jointly employed Plaintiffs and similarly situated employees.

**Sung Kyu Khim**

96.     Upon information and belief, Defendant Sung Kyu Khim ("Sung") is a resident of the State of New York.

97.     At all relevant times, Sung has been one of the founders, owners, and operators of the Khim's Markets.

98.      The Entity Information provided by the New York State Department of State Division of Corporations identifies Sung as the "Chief Executive Officer" of KM V and KM VI.

99.      Sung is the "Principal" listed on the New York State Liquor License for the premises doing business as "Khim's Millennium Market" that are or were located at 430 Driggs Ave, Brooklyn, New York, 11211; 294 Graham Ave, Brooklyn, New York 11211; 260 Bushwick Ave, Brooklyn, New York, 11206; 111 Lawrence St, Brooklyn, New York, 11201; 265 Bedford Ave, Brooklyn, New York 11211; 185 Bedford Ave, Brooklyn, New York 11211; and 120 Bedford Ave, Brooklyn, New York 11249.

100.     At all relevant times, Sung had power over personnel decisions at the Khim's Markets, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

101.     At all relevant times, Sung had power over payroll decisions at the Khim's Markets, including the power to retain time and/or wage records.

102.     At all relevant times, Sung was actively involved in managing the day to day operations of the Khim's Markets.

103.     At all relevant times, Sung had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

104.     Sung was a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, employed and/or jointly employed Plaintiffs and similarly situated employees.

**Song Kyu Khim**

15

105.     Upon information and belief, Defendant Song Kyu Khim ("Song") is a resident of the State of New York.

106.     At all relevant times, Song is one of the founders, owners, and operators of the Khim's Markets.

107.     The Entity Information provided by the New York State Department of State Division of Corporations identifies Sung as the "Chief Executive Officer" of KO II.

108.     At all relevant times, Song had power over personnel decisions at the Khim's Markets, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

109.     At all relevant times, Song had power over payroll decisions at the Khim's Markets, including the power to retain time and/or wage records.

110.     At all relevant times, Song was actively involved in managing the day to day operations of the Khim's Markets.

111.     At all relevant times, Song had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

112.     Song was a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, employed and/or jointly employed Plaintiffs and similarly situated employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

113.     Plaintiffs bring the First Claim for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all the Non-Exempt Workers that Defendants

employed on or after the date that is three years before the filing of the Original Complaint in this case as defined here ("FLSA Collective Plaintiffs").

114.    At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay the legally required overtime wage for all hours worked over forty (40) hours in a workweek, and willfully misappropriating their tips. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

115.    The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

116.    Plaintiffs brings the Second, Third, Fourth, and Fifth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all of Non-Exempt Workers that Defendants employed on or after the date that is six years before the filing of this Complaint (the "Class Period").

117.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from Defendants' records. The hours assigned and worked, and the rates of pay for each Class member are also determinable from Defendants' records. For the purpose of notice and

other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

118. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

119. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime wages owed, failing to pay the spread of hours premium, failing to pay the manual workers on a weekly basis, and failing to provide written wage notices and pay statements. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

120. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented and/or currently represent plaintiffs in wage and hour cases.

121. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

122.     Upon information and belief, Defendants and other employers throughout the region violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree

of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

123.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members, including:

a) Whether Defendants employed Plaintiffs and the Class members within the meaning of New York law.

b) At what common rate, or rates subject to common methods of calculation, were and is Defendants required to pay Plaintiffs and the Class members for their work.

c) The policies, practices, programs, procedures, protocols and plans of Defendants regarding the work and labor for which Defendants did not pay overtime wages for the Plaintiffs and the Class members.

d) Whether Defendants paid Plaintiffs and the Class members the appropriate overtime wage for all overtime hours worked.

e) Whether Defendants paid Plaintiffs and the Class members the spread of hours premium on days in which they worked for more than 10 hours.

f) Whether Plaintiffs and the Class members were manual workers as defined under the New York Labor Law.

g) Whether Defendants paid Plaintiffs and the Class members on a weekly basis.

h) Whether Defendants issued adequate and lawful written wage notices to Plaintiffs and the Class members.

i) Whether Defendants issued adequate and lawful written pay statements to Plaintiffs and the Class members.

**FACTS**

124.    Plaintiffs' consent to sue forms are attached hereto as Exhibit A.

125.    Defendants committed the foregoing acts willfully, and against Plaintiffs, the FLSA Collective Plaintiffs, and the Class Members.

126.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA and NYLL as described herein.

127.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as described below.

**Plaintiff Lorenzo Vega Camillo**

128.    Plaintiff Camillo worked for Defendants from 2013 to October 2022.

129.    From 2013 to 2016, Plaintiff Camillo worked at Defendants' market located at 265 Bedford Avenue, Brooklyn, NY 11211.

130.    In 2016, Plaintiff Camillo was instructed by his supervisor to report to work at the Khim's Market located at 460 Driggs Avenue, Brooklyn, New York 11211. From then on he worked at the Khim's Market located at 460 Driggs Avenue, Brooklyn, New York 11211, under the same supervisor from the 265 Bedford Avenue location.

131.    From 2016 to October 2022, Plaintiff Camillo worked at Defendants' market located at 460 Driggs Avenue, Brooklyn, New York 11211.

132.    Plaintiff's job duties, regular rate of pay, and employment conditions were the same in both of Defendants' markets.

133.    Plaintiff Camillo worked for Defendants as a clerk from 2013 to early 2021.

134.    As a clerk, Plaintiff Camillo's job duties included cleaning the store, chopping vegetables and fruit, cutting meat and cheese, and stocking the shelves.

135.      Plaintiff Camillo worked for Defendants as a manager from early 2021 to October 29, 2022.

136.      As a manager, Plaintiff Camillo's job duties included all of the same tasks that he was responsible for when he worked as a clerk.  As a "manager" Plaintiff Camillo did not have any actual management authority, but he was tasked with the additional task of being responsible for covering the job duties of other workers at the market (which included staying late to check out customers).

137.      From 2013 to March 2020, Plaintiff Camillo worked 6 days a week. His day off during this period was Tuesday.

138.      During this period, on days that he worked, Plaintiff Camillo worked from 8am to 6/7pm. Plaintiff did not receive a lunch break during his workday.

139.      During this period, Plaintiff Camillo worked approximately 60 to 65 hours per week.

140.      From March 2020 to October 2022, Plaintiff Camillo worked 7 days a week, from 8am to 6/7pm.

141.      Thus, from March 2020 to January 2021, Plaintiff Camillo worked approximately 70 to 77 hours per week.

142.      After he became a manager at the beginning of 2021, approximately twice a week, Plaintiff Camillo would work late covering the cashiers job duties and checking out customers. On days Plaintiff Camillo worked late, he would work until between 10pm and midnight.

143.      Thus, from January 2021 to October 2022, Plaintiff Camillo worked approximately 78 to 85 hours per week.

144.     As a clerk, Defendants paid Plaintiff Camillo $15.00 per hour for every hour that he worked.

145.     As a manager, Defendants paid Plaintiff Camillo $25.00 per hour for every hour that he worked.

146.     Defendants did not pay Plaintiff Camillo one and a half times his regular rate of pay for hours that he worked over 40 in a week.

147.     Defendants did not pay Plaintiff Camillo a spread of hours premium on days when his shift lasted 10 hour or more.

148.     From 2013 to December 2021, Defendants paid Plaintiff Camillo every week.

149.     From December 2021 to October 2022, Defendants paid Plaintiff Camillo every two weeks.

150.     Every time that Defendants failed to pay Plaintiff Camillo his wages earned within seven days of the end of the workweek, Defendants deprived him of the use of money that belonged to him.  As a result, Plaintiff Camillo was unable to do those things that every person does with their money, such as paying bills or buying goods that he needed or wanted to buy. Moreover, by retaining money that belonged to Plaintiff Camillo, Plaintiff Camillo lost the time value of money.

151.     Throughout his employment, Plaintiff Camillo spent more than 25% of his workday performing physical tasks such as cleaning, chopping fruits and vegetables, cutting meat and cheese, stocking shelves, and checking out customers.

152.     Plaintiff Camillo worked for Defendants as a manual worker as defined under the New York Labor Law.

23

153.     Defendants paid Plaintiff Camillo by personal check.

154.     Defendants never provided Plaintiff Camillo a written wage notice.

155.     Defendants never provided Plaintiff Camillo a wage statement with his paycheck.

156.     Upon information and belief, Defendants implemented the same policy and pay practices described herein to all of the Non-Exempt Workers.

**Plaintiff Leticia Mejia Alejandro**

157.     Plaintiff Alejandro worked as a clerk for Defendants from February 2022 to October 2022.

158.     Plaintiff Alejandro worked at Defendants' market located at 460 Driggs Avenue, Brooklyn, New York 11211.

159.     As a clerk, Plaintiff Alejandro's job duties included cleaning the store, chopping vegetables and fruit, cutting meat and cheese, and stocking the shelves.

160.     Plaintiff Alejandro worked 7 days a week.

161.     From Monday to Friday Plaintiff Alejandro worked from 9am-6pm. On from Saturday and Sunday Plaintiff Alejandro worked from 8am to 6pm.

162.     Thus, Plaintiff Alejandro worked approximately 65 hours per week.

163.     Defendants paid Plaintiff Alejandro $15.00 per hour for every hour that she worked.

164.     Defendants did not pay Plaintiff Alejandro one and a half times her regular rate of pay for hours that she worked over 40 in a week.

165.     Defendants did not pay Plaintiff Alejandro a spread of hours premium on days when her shift lasted 10 hour or more.

166.     Defendants paid Plaintiff Alejandro every two weeks.

167.     Every time that Defendants failed to pay Plaintiff Alejandro her wages earned within seven days of the end of the workweek, Defendants deprived her of the use of money that belonged to her.  As a result, Plaintiff Alejandro was unable to do those things that every person does with their money, such as paying bills or buying goods that she needed or wanted to buy.  Moreover, by retaining money that belonged to Plaintiff Alejandro, Plaintiff Alejandro lost the time value of money.

168.     Throughout her employment, Plaintiff Alejandro spent more than 25% of her workday performing physical tasks such as cleaning, chopping fruits and vegetables, cutting meat and cheese, and stocking shelves.

169.     Plaintiff Alejandro worked for Defendants as a manual worker as defined under the New York Labor Law.

170.     Defendants paid Plaintiff Alejandro by personal check.

171.     Defendants never provided Plaintiff Alejandro a written wage notice.

172.     Defendants never provided Plaintiff Alejandro a wage statement with his paycheck.

173.     Upon information and belief, Defendants implemented the same pay policies and practices described herein to all of the Non-Exempt Workers.

**FIRST CLAIM FOR RELIEF**
**FLSA Overtime Violations, 29 U.S.C. § 207**
**Brought by Plaintiffs on Behalf of Themselves**
**and the FLSA Collective Plaintiffs**

174.     Plaintiffs, on behalf of themselves and other FLSA Collective Plaintiffs, reallege and incorporate by reference all previous paragraphs.

175.      At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed, "employee[s]," including Plaintiffs and each of the FLSA Collective Plaintiffs.

176.      Throughout the statute of limitations period covered by these claims, Plaintiffs and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek.

177.      At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Plaintiffs and the FLSA Collective Plaintiffs at one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though Plaintiff and the FLSA Collective Plaintiffs have been and are entitled to overtime.

178.      Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**New York Overtime Violations**
**New York Minimum Wage Act, N.Y. Stat. § 650 *et seq.*,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.4**
**Brought by Plaintiffs on Behalf of Themselves and the Class**

179.      Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

180.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

181.    Throughout the Class period, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the Class members at the required overtime rate of one-and-one-half times the greater of the minimum wage or their regular rate for hours worked in excess of forty (40) hours per workweek.

182.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

### THIRD CLAIM FOR RELIEF
**New York Notice Requirements, N.Y. Lab. L. §§ 195, 198**
**Brought by Plaintiffs on Behalf of Themselves and the Class**

183.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

184.    Defendants did not provide Plaintiffs and the members of the Class with the wage notices/wage statements required by N.Y. Lab. Law § 195.

185.    As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. Law § 198.

### FOURTH CLAIM FOR RELIEF
**New York Spread of Hours Provisions**
**N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.6**
**Brought by Plaintiffs on Behalf of Themselves and the Class**

186.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

187.     Plaintiffs and the Class Members had workdays that lasted more than ten (10) hours.

188.     Defendants willfully and intentionally failed to compensate Plaintiffs and the Class Members one hour's pay at the basic New York minimum hourly wage rate when their workdays lasted more than ten (10) hours, as required by New York law.

189.     As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including compensatory damages, and liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. L. § 198.

**FIFTH CLAIM FOR RELIEF**
**New York Late Payment of Wages Provisions**
**New York Minimum Wage Act, N.Y. Lab. L. § 190 et seq.**
**Brought by Plaintiffs on Behalf of Themselves and the Class**

190.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

191.     At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the NYLL, § 190, et seq. At all relevant times, Defendants have employed "employee[s]," including Plaintiffs.

192.     At all relevant times, Plaintiffs and the Class Members were and are manual laborers under the NYLL.

193.     Since at least December 2021, Defendants have not paid Plaintiffs and the Class members on a weekly basis.

194.     Instead, Defendants issued paychecks to Plaintiffs and the Class members every other week.

195.     The aforesaid conduct of Defendants was knowing, intentional, and willful.

196.     By their aforesaid conduct, Defendants willfully violated the provisions of the NYLL regarding timely payment of wages, NYLL Art. 6 § 191, et seq.

197.     Plaintiffs and the members of the Class are thereby entitled to recover from Defendants, jointly and severally, liquidated (double) damages in the amount of their untimely paid wages, as provided by the NYLL for wage violations, interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs and members of the Class, pray for relief as follows:

A.     An award of damages, according to proof, including compensatory damages, liquidated damages, and punitive damages, to be paid by Defendants;

B.     Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and NYLL claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

C.     Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

D.     Designation of this action as a class action pursuant to F.R.C.P. 23;

E.     Designation of Plaintiffs as Representatives of the Class;

F.      Penalties available under applicable laws;

G.      Costs of action incurred herein, including expert fees;

H.      Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, and other applicable statutes;

I.      Pre-judgment and post-judgment interest, as provided by law; and

J.      Such other and further legal and equitable relief as this Court deems necessary, just and proper.


Dated:  New York, New York              Respectfully submitted,
        December 23, 2022
                                        JOSEPH & KIRSCHENBAUM LLP


                                        By:   s/Michael DiGiulio
                                              D. Maimon Kirschenbaum
                                              Michael DiGiulio
                                              32 Broadway, Suite 601
                                              New York, NY 10004
                                              Tel: (212) 688-5640
                                              Fax: (212) 688-2548

                                        *Attorneys for Named Plaintiffs, proposed*
                                        *FLSA Collective Plaintiffs, and proposed*
                                        *Class*




## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.